*1305
 
 MAYER, Chief Judge.
 

 Andrew M. Collaro appeals from the judgment of the Court of Veterans Appeals dismissing his appeal from .the Board of Veterans Appeals for lack of jurisdiction.
 
 Collaro v. Brown,
 
 No. 95-822 (Vet.App. Jan.7, 1997). Because the Court of Veterans Appeals erred in dismissing his constitutional and statutory claims, we vacate and remand.
 

 Background
 

 Collaro served on active duty in the United States Navy from April 1967 through January 1971 and then from November 1973 through November 1975, before he was honorably discharged. In August 1976, the Veterans Administration Regional Office awarded him an initial disability rating of fifty percent for chronic schizophrenic reaction undifferentiated type severe, effective from November 8, 1975. After three years of unemployment, the regional office increased Collaro’s disability rating to seventy percent and granted him total disability based on individual unemployability. No further examinations were to be scheduled and on September 16,1980, the agency sent him a letter stating: “Your disability was determined to be permanent.” The individual unemploya-bility evaluation and the benefits attributable to it could not be reduced except upon “a determination that actual employability is established by clear and convincing evidence.” 38 C.F.R. § 3.343(c)(1) (1980).
 

 In 1980, the central office of the agency distributed VA Circular 21-80-7 (Sept. 9, 1980), directing regional offices to review the appropriateness of grants of individual unem-ployability in order to reestablish control over the “many questionable or erroneous grants of individual unemployability.” The circular directed regional offices to assign a one hundred percent (total) schedular evaluation “if unemployability is directly attributable to a service-connected neuro-psychiatric condition as unemployability is a criterion for the total evaluation.” This circular was not published in the Federal Register or the Code of Federal Regulations, and the public was never invited to comment on the agency’s new rating procedures, as might be required by the Administrative Procedures Act, 5 U.S.C. §§ 701-706,
 
 see
 
 5 U.S.C. §§ 552(a)(1) (publication requirements), 553 (notice and comment requirements), or similar agency regulations adopted pursuant to chapter 72 of title 38 of the United States Code,
 
 see, e.g.,
 
 38 C.F.R. §§ 1.12, 1.551 (1980) (implementing provision of 5 U.S.C. §§ 553 and 552 respectively).
 
 **
 

 Following a psychiatric examination in July 1980 and pursuant to the new schedular rating criteria, the regional office reviewed Collaro’s disability rating. Due to regression of his mental disorder, which continued to render him unemployable, the regional office replaced his individual unemployability rating with a total schedular rating. The regional office scheduled subsequent reexaminations. One such examination in late 1984 resulted in a continuation of Collaro’s total schedular rating. However, based on an examination ten months later, the agency reduced his schedular rating to seventy percent, effective from March 1, 1985. This change reduced his monthly service connected disability compensation by more than half. Collaro appealed this decision to the Board of Veterans Appeals, which held in January 1986 that an evaluation in excess of seventy percent was not warranted. In June 1987, the board sustained Collaro’s seventy percent evaluation. In March 1989, the agency sent Collaro a letter notifying him that another rating action continued his evaluation percentage. He then filed a Notice of Disagreement (NOD).' Unedited, the entire text of this NOD reads:
 

 This is to inform, that am appealing your decision to the Board of Veterans of Appeals in reference to the letter dated March 28,1989. The designated representative in this case is the Veterans of Foreign Wars. It is indicated that on the record the designation for the rating for the service condition connected ( NERVOUS CONDITION) should be rated 100%.
 

 You are being notified that am filing a NOTICE OF DISAGREEMENT with representation by a service officer of VFW as of 3/31/89. Thank you.
 

 
 *1306
 
 On May 10,1989, the agency sent Collaro a statement of the case, as required by 38 U.S.C. § 4005(d)(1) (1988) (now codified at 38 U.S.C. § 7105(d)). On appeal, the board remanded the case to the agency so that the regional office could advise Collaro about recent statutory and regulatory changes (effective February 3, 1988) governing entitlement to evaluations in excess of seventy percent. The regional office reconfirmed the seventy percent rating under the new criteria and issued a supplemental statement of the case on March 23, 1990. Once again on appeal, the board held in July 1990 that an evaluation in excess of seventy percent was not warranted. Acting as Collaro’s designated representative, the Paralyzed Veterans of America requested reconsideration in May 1991, reasoning as follows:
 

 The Regional Office, in its decision of November 30, 1984, terminated the veteran’s total disability rating without considering [38 C.F.R.] § 8.343(a). As conceded by the VA General Counsel in
 
 [Swan v. Derwinski
 
 2 Vet.App. 72 (Vet.App.1991) ], the failure of the Regional Office, in this case, to consider § 3.343(a), in its rating decision of November 1984, makes the rating decision and the resultant termination of the veteran’s total disability rating
 
 void.
 
 Being void the reduction must be held to be of no force and effect and warrants a restoration of the veteran’s 100% rating.
 

 The board’s deputy vice-chairman denied reconsideration, stating in part:
 

 [I]t was not argued in this case in 1986 that a favorable result was warranted under the provisions of 38 C.F.R. [§ ] 3.343(a). Further, this is not a case involving an unrepresented veteran who was unsophisticated in applicable law. The veteran in this case was represented by a trained representative provided by a national service organization_ The motion does not show the Veteran was denied due process of law, that the relevant evidence was misstated or omitted, that incorrect law was used in resolving the issue on appeal or that the law was misapplied.
 

 Collaro appealed this decision to the Court of Veterans Appeals. In his brief, dated December 26,1991, he argued:
 

 When the RO awarded the veteran individual unemployability, 38 C.F.R. § 3.343(c) (1978) prohibited its termination except upon a showing by clear and convincing evidence that the veteran had regained his ability to be employed. When the RO in its rating decision of January 1981 amended the veteran’s award by assigning a total schedular rating as directed in DVB Circular 21-80-7 (Sep. 9, 1980), in place of the individual unemployability award, the RO violated § 3.343(c), because it did not establish by the necessary clear and convincing evidence that the veteran had regained his ability to work.
 

 The Secretary argued that Collaro’s claim — that termination of his individual un-employability rating was void
 
 ab initio
 
 — was not properly before the court. The Secretary also requested a remand so that the board could consider 38 C.F.R. § 4.16(c) (1991), which relates to the assignment of one hundred percent schedular evaluations to veterans who have a seventy percent evaluation and are precluded from “securing or following a substantially gainful occupation.” In March 1993, the court vacated the board’s 1990 decision and remanded Collaro’s appeal for consideration of section 4.16(c). The Paralyzed Veterans of America filed comments with the board on Collaro’s behalf, alleging
 
 inter alia,
 
 clear and unmistakable error. In October 1993, the board’s deputy vice chairman stated in a letter to Collaro: “The Board’s decision in this case will be limited to the issue remanded by the Court of Veterans Appeals. If you believe that the issue of clear and unmistakable error in a preyious Board decision is intertwined with the issue remanded by the Court, you may approach the Court for modification of its order.” Col-laro responded to the board’s letter stating that he could find no authority for the board’s refusal to address the issue of clear and unmistakable error. Further consideration of his case, however, was deferred pending the outcome of
 
 Smith v. Brown,
 
 35 F.3d 1516 (Fed.Cir.1994).
 

 On remand to the board in April 1995, Collaro argued for more than fourteen pages that:
 

 
 *1307
 
 Section 3.343(c) granted Mr. Collaro a property interest under Article V of the United States Constitution in the continued receipt of his individual unemployability benefits until the VA properly complied with the criteria governing its termination. When the VARO terminated his individual unemployability benefits without considering the governing criteria contained in the regulation it violated Mr. Collaro’s Constitutional right to due process of law. As such, its action is void
 
 ab initio
 
 and his individual unemployability benefits must be restored effective the date of their illegal termination.
 

 The board reviewed the record. Following the regulatory criteria established for the schedular ratings, it granted Collaro a total schedular rating, but did not consider his section 3.343(c) argument: “[T]he Board’s decision in this case is strictly limited to the issue remanded by the Court in March 1993 as there has been no modification of that order in the record.”
 

 Collaro appealed this decision to the court, seeking constitutional and statutory review of the circular and retroactive return of his individual unemployability rating and benefits. Specifically, he argued that the circular was invalid because its operation reduced his benefits without the due process guaranteed by 38 U.S.C. § 3.343(c), and because the circular had not been published in the Federal Register or subjected to the notice and comment provisions of the Administrative Procedures Act. On appeal, the agency argued that the court lacked jurisdiction because it only has jurisdiction over appeals from board decisions adverse to the veteran and the board had already granted Collaro the relief he sought. The agency also argued that the court lacked jurisdiction because Collaro’s constitutional and statutory arguments were not in issue. The court dismissed the appeal for lack of jurisdiction on the grounds that the board’s decision was not adverse to Collaro and he had not filed an NOD addressing the constitutionality of the circular. Collaro appeals.
 

 Discussion
 

 Our jurisdiction to review the Court of Veterans Appeals is limited by stat-ute: “After a decision of the United States Court of Veterans Appeals is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of any statute or regulation ... or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision.” 38 U.S.C. § 7292(a) (1994);
 
 see also id.
 
 § 7292(c) and (d). We lack jurisdiction to review the court’s factual determinations or its application of law to particular facts.
 
 See id.
 
 § 7292(d)(2). Because the issue of jurisdiction presents a question of law, we review
 
 de novo
 
 the Court of Veterans Appeals’ dismissal for lack of jurisdiction.
 
 See Wick v. Brown,
 
 40 F.3d 367, 370 (Fed.Cir.1994).
 

 The jurisdiction of the Court of Veterans Appeals is set forth in 38 U.S.C. §§ 7252 and 7261, the latter reading in pertinent part:
 

 (a) In any action brought under this chapter, the Court of Veterans Appeals, to the extent necessary to its decision and when presented, shall ...
 

 (3) hold unlawful and set aside decisions, findings ... conclusions, rules, and regulations issued or adopted by the Secretary, the Board of Veterans’ Appeals, or the Chairman of the Board found to be—
 

 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 

 (B) contrary to constitutional right, power, privilege, or immunity;
 

 (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or
 

 (D) without observance of procedure required by law.
 

 Initially, we observe that to the extent the board did not grant Collaro a total disability based on individual unemployability retroactive to 1981, its decision is adverse to him. In this case, the agency would be entitled to reduce Collaro’s total schedular rating and benefits upon a weaker evidentiary showing than is required by the clear and convincing evidence of actual employability standard for total disability that is premised on individual
 
 *1308
 
 unemployability. The financial relief granted neither removes Collaro’s cause for insecurity about his future nor restores the full value of his property interest.
 

 Nevertheless, the agency argues that the Court of Veterans Appeals may review a board decision only if the appeal was initiated by an NOD filed on or after November 18, 1988.
 
 See
 
 Veterans’ Judicial Review Act of 1988, Pub.L. No. 100-687, § 402, 102 Stat. 4105 (1988);
 
 see also Hamilton v. Brown,
 
 39 F.3d 1574, 1575-77 (Fed.Cir.1994). Although Collaro filed an NOD in 1989, the agency says this NOD contested the reduction in his schedular rating from one hundred to seventy percent, not the constitutionality of the circular or the termination of his individual unemployability basis for benefits in 1981. We disagree.
 

 It is unclear from the face of the NOD what agency action Collaro meant to contest. An NOD initiates appellate review.
 
 See
 
 38 U.S.C. § 7105(a) (1994). “A written communication from a claimant or the representative expressing dissatisfaction or disagreement with an adjudicative determination of an agency of original jurisdiction ... will constitute a notice of disagreement. The notice of disagreement should be in terms which can be reasonably construed as a desire for review of that determination. It need not be expressed in any special wording.” 38 C.F.R. § 19.118 (1989);
 
 see also id.
 
 § 20.201 (1997). However, because agency regulations do not define the term “adjudicative determination”—which we must understand in order to locate Collaro’s disagreement—we must further excavate the statutory and regulatory regime that Congress created to protect veterans.
 

 Once the agency receives a claimant’s NOD, it is statutorily bound to attempt to resolve the dispute.
 
 See
 
 38 U.S.C. § 7105(d) (1994);
 
 Hamilton,
 
 39 F.Sd at 1576. The agency must prepare a statement of the case, which is intended to “provide the appellant notice of those facts and applicable laws and regulations upon which the agency of original jurisdiction based its determination of the issue or issues.” 38 C.F.R. § 19.120(a) (1989). The statement of the case must include a “summary of the evidence in the case relating to the issue or issues with which the appellant or representative has expressed disagreement.”
 
 Id.
 
 This regulation equates “determination of the issue or issues” with section 20.201’s “adjudicative determination.”
 

 There are five common elements to a veteran’s application for benefits: status as a veteran, the existence of disability, a connection between the veteran’s service and the disability, the degree of the disability, and the effective date of the disability. Disagreement between the agency and the veteran about any of these may create an issue about which the agency reaches an adjudicative determination and which forms the substance of the veteran’s NOD. Once these elements have been established, disagreement between the agency and the veteran over legal entitlement to a particular benefit may also form the basis of a section 19.120 issue, a section 20.201 adjudicative determination, and a board decision or conclusion appealable to the Court of Veterans Appeals under 38 U.S.C. § 7261.
 

 What is clear is that Collaro came to his constitutional and statutory challenges late in the appeals process—perhaps as late as May 1991 when the Paralyzed Veterans of America filed a request for reconsideration with the board’s chairman. If Collaro had known about the circular when his individual unem-ployability evaluation was terminated in favor of a total schedular rating in 1981, and if he had anticipated the effect it would have on his benefits, we might expect him to have contested its rulemaking. The cloud of secrecy surrounding the circular and the lack of publication, notice and comment procedures in 1980 effectively prevented such claims. If Collaro’s benefits had been reduced during conversion to the schedular rating instead of four years later, we might have expected him to investigate the cause of the reduction. If Collaro had been subjected to extensive psychiatric examination in 1980 and early 1981, prior to conversion of his individual unemployability status to the sche-dular rating, he may have wondered why his degree of disability was being questioned, though it is more likely that he would have thought the examinations were to determine whether clear and convincing proof
 
 (see
 
 38
 
 *1309
 
 U.S.C. § 3.343(c)) supported a reduction in his total disability benefits due to his individual unemployability. If Collaro had a trained eye for reading rating decision forms, he may have noticed in the narrative section that a change to sections J and I indicated a new basis for his rating. If Collaro had been less than chronically schizophrenic, and if he had more sophisticated legal advice on which to rely than that of a representative from one of the forty or so invaluable national service organizations that represent veterans, we might expect more from him. Instead, like a significant number of veterans collecting benefits under the schedular ratings because of individual unemployability or total disability, Collaro lacked the knowledge, motivation, mental acuity and legal counsel necessary to inquire into the constitutionality of the circular, to detect the conversion, or specifically identify and correctly challenge the agency’s action.
 

 Congress has passed statutes and the agency regulations to assist veterans in establishing facts sufficient to support well-grounded claims and to give them every benefit that can be supported in law.
 
 See
 
 38 U.S.C. § 5107 (1994) (“[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim....”); 38 C.F.K. § 3.103(a)
 
 (“Statement of policy
 
 .... Proceedings before VA are ex parte in nature, and it is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government. The provisions of this section apply to all claims for benefits and relief, and decisions there-on_”). The agency also has the obligation to “provide the appellant notice of ... [a] summary of applicable law and regulations.” 38 C.F.R. § 19.120 (1989).
 

 Collaro filed a vague NOD. The agency responded by framing the issues in a statement of the case in terms of whether he was entitled to a seventy percent or a one hundred percent schedular rating. Collaro responded to the merits of this adjudicative determination as they were presented to him. As it turns out, the board now agrees that Collaro was correct on the facts and it has since granted him benefits commensurate with a total schedular rating. However, it was not until the Paralyzed Veterans of America requested reconsideration of that board decision, on remand from the Court of Veterans Appeals in 1991, that Collaro cut the rough stone of his NOD to reveal the statutory and constitutional radix of his issue that lay within. Although the agency reasonably may have believed that his disagreement could be resolved on the facts about the degree of his disability, without challenging the constitutionality of the circular, Collaro’s rights and interests should not be foreclosed because the agency framed his issue as “[I]f Mr. Collaro is entitled to a 100% rate for his service-connected psychiatric condition.” Nor should the agency’s decision or its failure to provide him with the constitutional and statutory bases for challenges to the circular foreclose his attempts to raise such a challenge when it becomes clear that the ‘issue,’ as previously framed, insufficiently characterized the full extent of his disagreement.
 

 In
 
 Ledford v. Gober,
 
 — F.3d — (Fed. Cir.1998), we affirmed the Court of Veterans Appeals’ dismissal for lack of jurisdiction in part because the veteran did not present constitutional and statutory challenges to the agency, and in part because Ledford failed to exhaust his administrative remedies in a way that would “avert the need for constitutional adjudication,”
 
 id.
 
 at - (quoting
 
 Blitz v. Donovan,
 
 740 F.2d 1241, 1248 (D.C.Cir. 1984)), “eliminate the need for the courts to pass on the constitutional questions,”
 
 id.
 
 at -(quoting
 
 Darr v. Carter,
 
 640 F.2d 163, 165 (8th Cir.1981)), or so that “constitutional challenges [may be] obviated,”
 
 id.
 
 at-. In both these respects, Collaro’s circumstances are different. Unlike Ledford’s 1991 NOD, which specifically identified and thus limited his issue to the effective date of his disability rating, Collaro’s NOD was not so narrowly limited. In the context of what was supposed to be a nonadversarial,
 
 ex parte,
 
 paternalistic system for adjudicating veterans’
 
 *1310
 
 claims, Collaro’s 1989 NOD sufficiently identified the constitutional and notice and rule-making issues that he had with the agency’s March 28,1989 letter.
 

 More importantly, in
 
 Ledford
 
 we held that the Court of Veterans Appeals lacked jurisdiction under 38 U.S.C. § 7252 to review the board’s decision because the board had never been presented with Ledford’s constitutional and statutory issues. Thus, under 38 U.S.C. § 7261, there was no decision, conclusion, or finding contrary to law that could be set aside. In this case, it is clear that Collaro presented his constitutional and statutory challenges to the agency, but the agency attempted to resolve Collaro’s factual issue without identifying the underlying legal issue, without notifying him in its statement of the case of the applicable laws and regulations upon which the agency determination was made, notably 38 C.F.R. § 3.343(e) (compare with 38 C.F.R. § 19.120 (1997)), and more significantly did so without ever addressing the constitutional and statutory issues that had been presented since at least 1991.
 

 Given this, the court had jurisdiction to review Collaro’s constitutional and statutory issues as well as his request for total disability based on individual unemployability. This is consistent with
 
 Ledford
 
 because Collaro presented an issue to the agency, the agency framed the issue on factual rather than constitutional and statutory grounds, presented it to Collaro, and then adjudicated it on only those grounds. When Collaro managed to reframe the issue to the agency in a way that more appropriately identified the radix of his disagreement, the agency chose not to recognize it. This is reviewable by the Court of Veterans Appeals.
 

 Conclusion
 

 Accordingly, we vacate the judgment of the Court of Veterans Appeals and remand the case with instructions that the court consider the merits of Collaro’s constitutional and statutory claims.
 

 VACATED AND REMANDED.
 

 **
 

 We express no opinion about the validity of the circular absent publication, notice and comment.