# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 95-984

GARRETT V. HAYRE, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided June 14, 2001 )

*Linda E. Blauhut, Esq.,* of Washington, D.C., was on the brief for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; *Thomas A. McLaghlin*, Special Assistant to the Assistant General Counsel; and *Amy S. Gordon,* all of Washington, D.C., were on the brief for the appellee.

Before KRAMER, *Chief Judge*, and HOLDAWAY and IVERS, *Judges*.

HOLDAWAY, *Judge*, filed the opinion of the Court. KRAMER, *Chief Judge*, concurring in part and dissenting in part as to dismissal.

HOLDAWAY, *Judge*: The appellant, Garrett V. Hayre, appeals from a June 1995 decision of the Board of Veterans' Appeals (BVA or Board) which determined that clear and unmistakable error (CUE) did not exist in a November 1972 VA regional office (VARO) decision. In December 1997, this Court affirmed the Board's decision. On appeal, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) affirmed the Court's decision that the November 1972 VARO decision did not contain CUE, but remanded the matter to determine whether the VARO breached its "duty to assist" in 1972 by failing to obtain certain requested service medical records (SMRs) that had not been previously obtained. *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999). This issue stemmed from a 1972 VARO adjudication as to which a Notice of Disagreement (NOD) was filed in 1973, a Statement of the Case (SOC) was issued, but the appellant, for whatever reason, failed to properly

press his appeal. The Federal Circuit held that if the VARO "breached the duty to assist in 1972, then the 1972 decision [wa]s not final for the purposes of direct appeal" and therefore, the appellant's claim would still be open and unadjudicated. *Id.* at 1335. The Federal Circuit directed this Court, if we found such a violation, to remand the case to the Secretary for further adjudication on the theory that the 1972 case remained open, notwithstanding its finality under relevant statutory law.

In April 2000, this Court ordered additional briefings on, inter alia, a troubling issue of jurisdiction that the Federal Circuit had not addressed in its disposition of the case. In sum, the Court asked the parties to address the following three questions: (1) Does this Court have jurisdiction over the issue remanded by the Federal Circuit?; (2) Was the Secretary required to provide assistance to the appellant in 1972?; and if so (3) Did the Secretary fulfill his duty to assist? In response, the parties agreed that the Court had jurisdiction over this matter, that the Secretary was required to provide assistance to the appellant in 1972, and that the Secretary had breached that duty to assist. Thus, the parties, both quoting the Federal Circuit's opinion, asserted that the Court should "remand the case to permit the [Secretary] the opportunity to fulfill the duty to assist and to review the case to determine whether the additional evidence, together with the evidence that was previously of record, supports the allowance of benefits sought on appeal." *Id.*

Although, the Secretary "conceded" jurisdiction, and requested a remand, he appeared troubled by the same sort of jurisdictional problems which presently concern this Court. In his view, the Federal Circuit's opinion, at least implicitly, found jurisdiction for its decision, and therefore, this Court must comply with the Federal Circuit's mandate. However, jurisdiction is a matter that cannot be so easily "finessed." This Court must affirmatively satisfy itself that it has authority to act. *See Insurance Corp. of Ireland, LTD, et al., v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed. 2d 492 (1982) (Citing *Mansfield, C. & L. M. R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884) (holding that a court must deny jurisdiction "in all cases where such jurisdiction does not affirmatively appear in the record")). We cannot accept jurisdiction simply because the parties conceded it. *See e.g. Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997); *see also Insurance Corp. of Ireland, LTD, et al., supra; California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.3d 342 (1972) (noting that " parties may not confer jurisdiction . . . upon th[e] . . . Court by stipulation). Jurisdiction must derive exclusively

from a clear and unambiguous act of Congress. *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) (quoting *Sheldon v. Sill,* 8 How. 441, 12 L.Ed. 1147 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers.")); *see also Prenzler v. Derwinski*, 928 F.2d 392 (Fed. Cir. 1991); *Archbold v. Brown*, 9 Vet.App. 124, 130 (1996). Jurisdiction may not be "assumed," "conceded," or "implied," and cannot be bestowed on a court by the court itself, or any other court. Moreover, the act of Congress bestowing jurisdiction must be strictly construed. *See Healy v. Ratta*, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248 (1934)*; United States ex rel. McKenzie v. Bellsouth Telecommunications, Inc.,* 123 F.3d 935, 940 (6th Cir. 1997)*; United States ex rel. Precision Co. v. Koch Indus., Inc.,* 971 F.2d. 548 (10th Cir. 1992), *cert. denied*, 507 U.S. 951, 113 S.Ct. 1364, 122 L.Ed.2d 742 (1993); *Livinston v. Derwinski*, 959 F.2d 224, 225 (Fed. Cir. 1992) (holding that the Federal Circuit's "jurisdictional scheme must be strictly construed in harmony with [its] Congressional mandate" and that it could not "extend [its] jurisdiction where none exist[ed]" (citing both *Chemical Eng'g Corp. v. Marlo, Inc.*, 754 F.2d 331, 333 (Fed. Cir. 1984) and *Christianson, supra*)); *F & S Construction Company, Inc. v. Jensen* 337 F.2d 160, 161 (1964); *Aetna Ins. Co. v. Chicago, R.I. & P.R.R.,* 229 F.2d 584 (10th Cir., 1959)*;.* Therefore, we say with the greatest respect to the Federal Circuit, that the mere fact that the Federal Circuit assumed jurisdiction over the 1972 adjudication without articulating a jurisdictional basis for doing so is not dispositive as to this Court.

If this Court cannot honestly articulate a persuasive and plausible rationale for jurisdiction, then we have no choice but to say so candidly, and rule accordingly. *See Grantham, supra.* Contrary to the apparent position of the Secretary, the mandate of the Federal Circuit in this case does not preclude consideration of the jurisdictional issue. Implicit in the consideration of any issue is the always inherent question of jurisdiction over that issue. This is particularly true in this case where neither the jurisdictional issue nor the issue of the so-called "finality" of the 1972 adjudicative determination was ever raised before either the BVA or this Court. The sole issue before the BVA and this Court on our initial review was whether there was CUE in the 1972 adjudication. The finality of the 1972 adjudication was never an issue which was raised before the BVA or this Court. The Federal Circuit affirmed this Court as to the CUE claim, a claim which we note necessarily assumes the finality of the adjudication being collaterally attacked.

Before turning to the specifics of this case, it may be helpful to review the jurisdictional prerequisites that apply to this Court. The first requirement is that this Court may only review final decisions of the BVA. *See Veterans' Judicial Review Act,* Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA §402]; *see also* 38 U.S.C. §§ 7105, 7252 (a), and 7266 (a); *see also Ledford v. West,* 136 F.3d 776 (Fed. Cir. 1998); *Archbold, supra; Manio v. Derwinski*, 1 Vet.App. 140, 144 (1991). We have no authority to review RO adjudicative determinations. *Id.* Moreover, the claim (or issue) that has been reviewed by the BVA must have been the subject of an NOD as to the underlying RO adjudication that was filed on or after November 18, 1988, *see* VJRA § 402; *see also Barrera v. Gober,* 122 F.3d. 1030, 1031 (Fed. Cir. 1997); *Archbold, supra*, and that NOD *must* have been filed within one year of the adjudicative determination that the claimant disagrees with. *See* VJRA §402; 38 U.S.C. §§ 7105 (b)(1) and (b)(2); 38 C.F.R. § 20.302 (a); *see also Ledford, supra.*

Turning now to the case, the appellant filed a timely NOD in 1973 as to the 1972 adjudicative determination, but did not pursue his appeal after the SOC was submitted. That is the only NOD that was ever filed with respect to the 1972 adjudication. The appellant points to an NOD filed in 1993, where he was attempting to show CUE as to the 1972 adjudication. However, this NOD was filed in response to a December 1992 decision on an entirely separate claim. In effect, the appellant wishes his 1993 NOD to serve a dual purpose: as an explicit NOD to its underlying adjudicative determination, and also as an implicit NOD to an earlier adjudicative determination (the 1972 decision for which an NOD had, in any event, already been filed).

The problems with this argument are these: (1) the 1993 NOD was filed nineteen years after the one-year statutory and regulatory requirements for filing an NOD; and (2) even asserting a theory of estoppel that would, *nunc pro tunc*, reach back and toll the statutory time limit for filing an NOD, this Court cannot ignore the fact that the 1993 NOD was submitted in response to a rating decision for an entirely separate claim, filed in September 1992, which claim in no way, explicitly or implicitly, purported to challenge the "issue of the finality" of the 1972 adjudication.

To base this Court's jurisdiction over the 1972 adjudication on the 1993 NOD would be in direct violation of other Federal Circuit decisions that have interrupted this Court's jurisdiction. In *Ledford, supra*, the Federal Circuit observed that this Court's jurisdiction "is premised on and

4

defined by the Board's decision." *See Ledford,* 136 F.3d at 779. When the Board has not rendered a decision *on a particular issue* the Court has no jurisdiction. In the same case, the Federal Circuit held that for this Court to have jurisdiction, the NOD must have been filed after November 18, 1988, and that the NOD must relate to a *specific* adjudicative determination on a *specific* date. *Id., see also Howard v. Gober,* 220 F.3d 134 (Fed. Cir. 2000).

Even if the 1993 NOD were to be interpreted as a "*Collaro*" type statement that "cut the rough stone" of the 1973 NOD, and thus perfected it, we would still be unable to assert jurisdiction because the "perfected" 1973 NOD would not have been filed on or after November 18, 1988. *See* VJRA § 402; *Collaro v. West*, 136 F.3d 1304 (Fed. Cir. 1998); *Ledford, supra.*

The Court notes the dissenting statement by the Chief Judge, and will briefly respond to it. First, it needs to be said that in this case the Federal Circuit never articulated a theory of its purported jurisdiction over the 1972 adjudication, even though its action was clearly premised on the fact that it considered the 1972 adjudication still open and "adjudicable" because of a "grave procedural error." The NOD conundrum as it relates to the 1972 adjudication was apparently never presented to them, else they would have, no doubt, included an analysis of it in their opinion. Our colleague therefore attempts to defend the Federal Circuit's jurisdiction by, first of all, refuting the very basis of their opinion, i.e., that the 1972 adjudication is still "open." He acknowledges that there is no jurisdiction over the 1972 adjudication, and then fashions a theory of jurisdiction which might as well be termed as "What the Federal Circuit might have said had it been presented with the problem and articulated a theory of jurisdiction." If we correctly understand his argument, it is, reduced to simple terms, this: While there is no jurisdiction over the 1972 claim, there is jurisdiction over an issue (i.e. an effective date) inherent in and raised by that claim. To concede, on the one hand, that we do not have *de jure* review authority over the 1972 adjudication, but that, through a ruse, i.e. an NOD to *another* claim, we nevertheless have some kind of authority to, de facto,"complete" the 1972 adjudication, is sophistry of a very high order. This argument ignores, as it must, the plain and unambiguous language of VJRA § 402, 38 U.S.C. § 7105, and 38 C.F.R. § 20.302 requiring that an NOD *must* be filed no later than one year after the adjudicative determination. Therefore, even if the 1992 NOD (which related exclusively to CUE as to the 1972 adjudication) could somehow be construed as reviving an issue brought by the 1972 claim, it was filed nineteen years too late.

In any event, the appellant filed an NOD in 1973. Taking Chief Judge Kramer's theory of jurisdiction to its logical (or illogical) conclusion, there would literally be no pre-1988 adjudications over which we could not have jurisdiction. All one would have to do is ferret out a "grave procedural error," whatever that is, and presto, the adjudication is given new life notwithstanding the fact that it is an adjudication over which, as our colleague admits, this Court has no jurisdiction.

In fairness to the Chief Judge, it appears that he is attempting to avoid a confrontation with our hierarchal judicial superiors, and in so doing, has tried valiantly, albeit vainly, to make a silk purse out of a sow's ear. We are sympathetic with his efforts, as we are very respectful of the court above, and do not relish the position in which we have been placed. We must either pay heed to the Federal Circuit in a situation where they did not articulate jurisdiction, or adhere to the clear and unambiguous judicial enactments of Congress. In good conscience, we cannot do both. Since it is Congress, not the courts, that defines our jurisdiction, we must necessarily defer to them. The interpretation suggested by our colleague, which we emphasize is not the position of the Federal Circuit, would pervert the clear meaning of the statute and regulation to such an extent as to render them both meaningless. A worse case of judicial usurpation can scarcely be imagined. While the Chief Judge cites to *Woods* and *Tablazon* for the proposition that this Court's precedents require us now to assume jurisdiction over pre-VJRA claims which lack timely post-VJRA NODs, those decisions were, at least in their assumptions as to the issue of jurisdiction, much like the Federal Circuit's decision in *Hayre, supra*., i.e., decisions which neither articulated a basis for jurisdiction over the case on appeal, nor considered the Congressionally mandated limits to our appellate review authority. Such unarticulated assumptions as to jurisdiction cannot be treated as precedent. There simply is no jurisdictional "holding" in these cases.

In summary, we cannot find, try as we might, a rationale that would permit us ethically, or intellectually, to construct a plausible theory of jurisdiction in this case. We reach this conclusion reluctantly, as it places us in potential conflict with the court that Congress has placed above us for review of legal questions. We respect the Court and its directions to us, and we must comply with those directions where we have the jurisdiction to do so. We also recognize that had the Federal Circuit explicitly articulated a theory of jurisdiction in this case, we would be bound by that interpretation as law of the case even if we personally, as judges, disagreed with its rationale, and

6

even though that interpretation would seem to run counter with the plain language of the statute, as well as other precedent from the same court. However, there is no such interpretation in this case, and we cannot accept jurisdiction in face of the plain language of our jurisdictional statutes that, in our view, preclude jurisdiction, as well as other cases cited above from the Federal Circuit that lead to the same conclusion. The case is DISMISSED.

KRAMER, *Chief Judge*, concurring in part and dissenting in part as to dismissal: I agree with the majority that in order for the Court to have jurisdiction over a claim of "grave procedural error" as defined by the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999) [hereinafter *Hayre* claim], the appellant must have filed a jurisdictionally valid Notice of Disagreement (NOD) as to that claim. However, I disagree with the holdings of the majority that such an NOD could not confer on the Court jurisdiction to consider, in resolving the present claim, whether there was grave procedural error as to a 1972 VA regional office (RO) decision and that, assuming that such an NOD could confer jurisdiction, the appellant in this case has not filed such an NOD. Accordingly, I would hold that the Court has jurisdiction to consider the *Hayre* claim as to the 1972 RO decision and would vacate the Board's June 7, 1995, decision and remand the 1989 rating claim for adjudication consistent with the following analysis and the Federal Circuit's opinion here.

## I. FACTS

The appellant, Garrett V. Hayre, served on active duty in the U.S. Marine Corps from June 1969 to October 1971, with combat service in Vietnam for which he was awarded several decorations. Record (R.) at 11. In October 1972, he filed a claim for service-connected disability compensation for a "nerve problem" and indicated that while in service he had twice consulted service medical personnel for his nerve problem. R. at 14-17. In November 1972, the RO denied the appellant's claim for service connection for a nervous disorder. R. at 41-42. In September 1973, he filed a statement disagreeing with that denial. R. at 44. The RO issued a Statement of the Case (SOC) (R. at 46-49), but there is no evidence that the appellant filed a Substantive Appeal to the Board of Veterans' Appeals (BVA or Board) as to that claim.

On September 2, 1992, the RO received a statement by the appellant that he was experiencing depression, stress, and other problems. R. at 146. He then filed a formal claim for post-traumatic stress disorder (PTSD). R. at 149-52. In December 1992, the RO granted the appellant service connection for PTSD and assigned a 50% rating, effective September 2, 1992. R. at 181-82. In March 1993, he filed with the RO a statement as follows:

> The rating decision of November 6, 1972, is clearly erroneous in its denial for service connection of a nervous condition claimed by the veteran.
>
> Mr. Hayre served honorably in the U.S. Marines from 6-24-69 until 10-29-71, he filed [an application for compensation] for a "nerve problem", that warranted him seeing a psychiatrist at a duty station in Rhode Island, October of [19]71. The claim form is date stamped September 29, 1972.
>
> The regional office requested this man[']s service medicals and subsequently denied his claim based sole[l]y on the [service medical records (SMRs)], without the benefit of a VA exam[ination] being considered.
>
> The action taken by the original office of jurisdiction is clearly erroneous in that they failed to properly develop this man[']s claim, by not requesting necessary clinical records from the department of service or the facilities named. Along with the lack of assistance to secure records necessary for rating action, this man was not afforded a VA exam[ination].
>
> Due to the long history of a variety of diagnos[e]s, that ultimately resulted in a grant of service connection for PTSD, the earlier effective date would be in order.

R. at 184. In April 1993, the RO characterized the appellant's claim as one for clear and unmistakable error (CUE) in the November 1972 RO decision and denied that claim and, in essence, an earlier effective date. R. at 187-88. In early June 1993, the appellant filed the following statement:

> Notice of disagreement with rating decision of April 8, 1993. . . .
>
> The original rating evaluated the veteran[']s claim on incomplete medical records. The duty to assist in the development of the claim was clearly absent. The veteran elaborated when and where he was seen by a psychiatrist . . . . The absence of the medical records from the [SMR] packet, regarding psychiatric visits, was not developed, no additional information was sought, either from the veteran or the service department.

This man[']s claim was filed within [a] year of separation, he had stated dates and places where he had received psychiatric treatment, when the [SMRs] came in and didn't include the psychiatric records, the [RO's decision] was to disallow the claim, and not request additional records or a VA exam[ination].

This man[']s symptoms have been consistent over the years. There are several entries where the veteran was diagnosed and treated for PTSD at VA facilities as early as 1981, which could have warranted an earlier effective date of the award.

R. at 194. Later in June 1993, the RO issued an SOC addressing the CUE claim. R. at 196-202. The appellant filed in the same month a Substantive Appeal in which he stated:

Evidence was available in my [SMRs] regarding psychiatric treatment that should have prompted you to schedule an exam[ination]. Other evidence could have been obtained by the VA if I was to be given due process.

Since I am service connected for PTSD[,] it is obvious that the disability is the result of service. I have filed for PTSD on three different occasions and the end result is that my claims have been valid. Your reasons for denying the earlier effective date based on a clearly erroneous decision dated 11/6/72 are not valid.

R. at 204. In the June 7, 1995, BVA decision here on appeal, the Board, relying on *Caffrey v. Brown*, 6 Vet.App. 377 (1994), concluded that the appellant's claim of CUE in the November 1972 RO decision was "not well grounded" because "VA's breach of its duty to assist cannot form the basis for a claim of [CUE]" and dismissed the appeal. R. at 7-8.

The appellant appealed to this Court. In his brief, he argued, inter alia, that the Board erred in determining that this case was controlled by this Court's opinion in *Caffrey*, 6 Vet.App. at 383 (holding that VA breach of duty to assist generally cannot be basis of CUE claim). He maintained that the cases were distinguishable on the ground that in *Caffrey*, 6 Vet.App. at 383, any "failure [of the duty to assist] resulted in the creation of an incomplete rather than an incorrect record" because the documents at issue were private records that could have been obtained by the appellant, whereas in this case, the breach of the duty to assist was more significant in that VA had failed to satisfy its regulatory obligation to obtain SMRs before adjudicating the claim. Brief at 11-15. In a December 1997 single-judge memorandum decision, this Court affirmed the June 1995 BVA decision as to CUE on the ground that the appellant had "not established that VA breached its duty to assist or that the alleged records would be outcome determinative." *Hayre v. Gober*, U.S. Vet. App. No. 95-984, mem. dec. at 4 (Dec. 2, 1997) (mem. dec.). The appellant appealed, and in August 1999 the Federal

9

Circuit affirmed this Court's decision as to CUE. *Hayre*, 188 F.3d at 1333. However, the Federal Circuit held that "a single request for pertinent SMRs specifically requested by the claimant and not obtained by the RO does not fulfill the duty to assist." *Hayre*, 188 F.3d at 1332. The Federal Circuit further held:

> In cases of grave procedural error, . . . the Court of Appeals for Veterans Claims has consistently held that RO or Board decisions are not final for purposes of direct appeal. . . . A breach of the duty to assist in which the VA failed to obtain pertinent SMRs specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency is a procedural error of, at least, comparable gravity that vitiates the finality of an RO decision for purposes of direct appeal.

*Hayre*, 188 F.3d at 1333. The Federal Circuit then specifically instructed this Court that "where there is a breach of the duty to assist in which the VA failed to obtain pertinent SMRs specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency, the claim does not become final for purposes of appeal" and remanded the case to this Court for a determination as to "whether the RO breached its duty to assist as defined in 1972." *Hayre*, 188 F.3d at 1334-35. The Federal Circuit noted:

> [I]f the Court of Appeals for Veterans Claims finds that the RO breached the duty to assist in 1972, then the 1972 RO decision is not final for purposes of direct appeal. In such a case, the Court of Appeals for Veterans Claims would need to remand the case to permit the [agency of original jurisdiction] the opportunity to fulfill the duty to assist and to review the case to determine whether the additional evidence, together with the evidence that was previously of record, supports the allowance of benefits sought on appeal.

*Hayre*, 188 F.3d at 1335. On remand, a panel of this Court ordered the parties and invited interested amicus curiae to submit memoranda as to this Court's jurisdiction, any breach of the 1972 duty to assist, and any requirement that in 1972 a claim had to have been well grounded in order to qualify for the duty to assist. *Hayre v. West*, U.S. Vet. App. No. 95-984 (Apr. 14, 2000) (per curiam order). The parties filed memoranda in response to the Court's order, and an amicus curiae brief was filed on behalf of the National Organization of Veterans' Advocates.

## II. ANALYSIS

This Court's appellate jurisdiction derives exclusively from the statutory grant of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson*

*v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988); *see also Prenzler v. Derwinski*, 928 F.2d 392, 393-94 (Fed. Cir. 1991); *Skinner v. Derwinski*, 1 Vet.App. 2, 3 (1990). "Moreover, it is well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case *before* adjudicating the merits, that a potential jurisdictional defect may be raised by the court or tribunal, *sua sponte* or by any party, at any stage in the proceedings, and, once apparent, must be adjudicated." *Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996). Accordingly, I agree with the majority that this Court has the responsibility to determine for itself whether it has jurisdiction to consider a claim, irrespective of the contentions of the parties. *See Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997), *rev'g*, 8 Vet.App. 228 (1995). I note that, although the Federal Circuit does have the authority to review an interpretation by this Court as to its jurisdictional statutes, *see Grantham*, 114 F.3d at 1158; *In the Matter of the Fee Agreement of Wick*, 40 F.3d 367, 370 (Fed. Cir. 1994); *Mayer v. Brown*, 37 F.3d 618, 619 (Fed. Cir. 1994), there has been no such jurisdictional determination by the Federal Circuit in this case.

A. Applicable Law

In general, this Court has jurisdiction to review a final BVA decision only where an NOD, as to the underlying RO decision, has been filed on or after November 18, 1988. *See* Veterans' Judicial Review Act, Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) (VJRA); 38 U.S.C. § 7105; *Velez v. West*, 11 Vet.App. 148, 157 (1998) ("Court has no jurisdiction over an issue absent a post-November [17], 1988, NOD, expressing disagreement with an RO's decision on that issue or with an RO's failure to adjudicate that [issue]"). This Court has jurisdiction over a new and previously undecided or "down-stream" issue, such as disability rating or earlier effective date, where the appellant has filed a post-VJRA NOD as to that issue, even though the appellant had filed a pre-VJRA NOD as to an "up-stream" issue, such as service connection. *Barrera v. Gober*, 122 F.3d 1030, 1032 (Fed. Cir. 1997); *see Grantham*, 114 F.3d at 1158-59.

An NOD is defined by regulation as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [RO] and a desire to contest the result"; it "must be in terms which can be reasonably construed as [expressing] disagreement with that determination." 38 C.F.R. § 20.201 (2000); *see Gallegos*

11

*v. Gober*, 14 Vet.App. 50, 57-58 (2000); *see also Fenderson v. West*, 12 Vet.App. 119, 128 (1999); *Buckley v. West*, 12 Vet.App. 76, 82 (1998); *Beyrle v. Brown*, 9 Vet.App. 24, 27 (1996). Generally, an NOD "shall be filed within one year from the date of mailing of notice of the result of initial review or determination" with which it is disagreeing. 38 U.S.C. § 7105(b)(1). "Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a)." *Beyrle*, 9 Vet.App. at 27; *see also Fenderson* and *Buckley*, both *supra*.

### B. Application of Present-Claim-Stream NOD to Pre-VJRA Claim

Contrary to the analysis provided by the majority, *see ante* at __, slip op. at 3-5, this Court need not have jurisdiction over the *service-connection issue*; it is enough to have jurisdiction over the *earlier-effective-date issue* in order to consider the ramifications of the RO's conduct in reaching a decision in 1972. *Cf. Barrera*, 122 F.3d at 1032 (pre-VJRA NOD as to service-connection issue does not deprive Court of jurisdiction over earlier-effective-date issue with post-VJRA NOD); *Grantham*, 114 F.3d at 1158-59 (same). Moreover, according to this Court's caselaw, which is not discussed by the majority, the Court can reach an error in a pre-VJRA, old claim stream (original claim) based on its jurisdiction over a matter in a post-VJRA, new claim stream (claim to reopen the original claim). *See Woods v. Gober*, 14 Vet.App. 214 (2000); *Hyson v. Brown*, 5 Vet.App. 262 (1993); *see also Tablazon v. Brown*, 8 Vet.App. 359 (1995).

In the *Woods* case, after the RO had denied the appellant's PTSD claim in 1985, the appellant filed in 1989 a claim to reopen that previously and finally disallowed PTSD claim. *Woods*, 14 Vet.App. at 216. The RO awarded the appellant service connection for PTSD and assigned a 50% rating, effective in 1989 on the date of his claim to reopen. The appellant filed as to that RO decision an NOD as to the 1989 rating claim, and in 1997 (in the same new claim stream), the RO assigned a 70% PTSD rating and a rating of total disability based on individual unemployability, both effective in 1989. The appellant filed an NOD as to an earlier effective date, arguing that the RO in 1985 should have tried to locate him to give him notice of the 1985 RO decision. *Woods*, 14 Vet.App. at 217. The Court held that the 1985 RO decision did not become final because the RO did not send notice to the appellant at an additional address, and the Court remanded that case for adjudication of an earlier effective date. *Woods*, 14 Vet.App. at 221.

12

The appellant in *Tablazon* filed a claim to reopen two arthritis claims that had been previously and finally denied by a 1975 RO decision and later appealed a BVA decision that determined that the evidence presented was not new and material. *Tablazon*, 8 Vet.App. at 360. After noting that "where VA has failed to procedurally comply with statutorily mandated requirements, a claim does not become final for purposes of appeal," the Court concluded that the appellant had filed a valid NOD as to the 1975 RO denial and that the RO had not issued an SOC. *Tablazon*, 8 Vet.App. at 361. Based on that conclusion, the Court held that "the BVA erroneously treated that rating decision as final and required new and material evidence to reopen" and that the appellant need not have presented new and material evidence. *Id*. Finally, the Court dismissed the appeal on the ground that "[g]iven the pendency of the prior appeal to the Board, we conclude that there is no final Board decision before us for review." *Id*.

In sum, in the *Woods* opinion, the Court held that it had jurisdiction--presumably based on the new NOD. *Woods*, 14 Vet.App. at 216; *see also Hyson*, 5 Vet.App. at 264-65. In *Tablazon*, although the Court ultimately dismissed the appeal, the Court's rationale for its intermediate decision (that the claim was not one to reopen but was an original claim) was that the RO had erred by failing to issue an SOC following a 1976 NOD. *Tablazon*, 8 Vet.App. at 361; *see also Hanson v. Brown*, 9 Vet.App. 29, 31-32 (1996) ("[t]he issue, boiled down to its essentials, is whether there remained a viable claim for PTSD in 1984 upon which an effective date could be anchored"; holding that "evidence of record provides, at the least, a plausible basis for the Board's finding that the appellant withdrew his February 1984 PTSD claim; therefore, the Board's decision denying the appellant entitlement to an effective date retroactive to 1984 is not clearly erroneous").

In addition, this Court has in other cases considered an old claim stream error in order to make that old claim stream part of the new claim stream. *See*, *e.g.*, *Hauck v. Brown*, 6 Vet.App. 518 (1994); *Kuo v. Derwinski*, 2 Vet.App. 662 (1992), *dismissed*, 9 Vet.App. 273 (1993) (in earlier-effective-date case, holding Court lacked jurisdiction because original service-connection NOD was pre-VJRA), *overruled by Grantham*, 114 F.3d at 1158-59 (holding that Court can consider down-stream issues under new issue-specific post-VJRA NOD). Moreover, in claims to reopen, the Court has considered the finality of old-claim-stream decisions but concluded that there were no errors or no errors grave enough to affect the finality of the old decision. *See*, *e.g.*, *Tetro v. Gober*,

13

14 Vet.App. 100 (2000); *Valasco v. West*, 12 Vet.App. 172 (1999). Perhaps most importantly, there does not appear to be any opinion in which the Court has refused to consider old-claim-stream errors when there was a new-claim-stream, jurisdiction-conferring NOD.

## C. Application to *Hayre* Claim

In *Ledford v. West*, the Federal Circuit stated that all applicable "legal reasoning supporting . . . a challenge [to a denial of a claim] need not appear in the NOD" filed as to that denied claim because "[t]he Board is clearly empowered to determine which law applies to the facts presented." *Ledford*, 136 F.3d 776, 780-81 (Fed. Cir. 1998); *see also Maggitt v. West*, 202 F.3d 1370, 1375 (Fed. Cir. 2000). Based on that premise, the Federal Circuit in *Collaro v. West* held that where an appellant has filed an NOD sufficient to place a particular claim into appellate status, this Court has jurisdiction over all issues that are "appropriately identified [from] the radix of his [NOD]." *Collaro*, 136 F.3d 1304, 1310 (Fed. Cir. 1998). "*Ledford* and *Collaro* support the proposition that this Court has jurisdiction over claims that an appellant has reasonably raised to the RO and that the BVA has failed properly to adjudicate, and that the Court may entertain any arguments made in support of such claims when presented with a 'vague' or general NOD or, at least, one that does not limit the Court's consideration of the arguments made." *Buckley*, 12 Vet.App. at 82-83 (citing, inter alia, *Isenbart v. Brown*, 7 Vet.App. 537, 540-41 (1995) (Court considered totality of communications received before and after NOD in concluding that its expressed disagreement "encompassed the RO's failure to adjudicate the [particular] claim" and remanded for Board review of that unadjudicated claim)).

If after an NOD is filed the disagreement is not resolved, the RO must issue an SOC. *See* 38 U.S.C. § 7105(d)(1). That SOC "is meant to assist the veteran in gaining every benefit that can be supported in law." *Maggitt*, 202 F.3d at 1375. The appellant is then required to file a Substantive Appeal that "set[s] out specific allegations of error of fact or law." 38 U.S.C. § 7105(d)(3). "To the extent feasible, the argument should be related to specific items in the [SOC,] and . . . [the] Board will construe such arguments in a liberal manner for purposes of determining whether they raise issues on appeal . . . ." 38 C.F.R. § 20.202 (2000).

There appears to be no dispute here that there are two valid NODs: (1) A September 1973 NOD as to the November 1972 RO denial of the claim for a nervous condition; and (2) a June 1993

14

NOD as to the April 1993 denial of the CUE claim. It is also clear that the September 1973 NOD, having been filed before November 18, 1988, cannot confer jurisdiction on this Court. *See* VJRA § 402; 38 U.S.C. § 7105; *Velez*, *supra*. However, as discussed above, contrary to the analysis provided by the majority, this Court need not have jurisdiction over the 1972 RO decision; indeed, it cannot.

What is critical is whether the appellant submitted a jurisdiction-conferring NOD as to the *Hayre* claim and whether that claim was later reasonably raised to the Board. *See Buckley*, 12 Vet.App. at 82-83. In this regard, I note that a *Hayre* claim and a CUE claim are antithetical because a CUE claim presupposes that the target RO decision is final, *see Norris (Robert) v. West*, 12 Vet.App. 413, 422 (1999); *Crippen v. Brown*, 9 Vet.App. 412, 417-18 (1996), whereas a *Hayre* claim attempts to defeat the finality of that RO decision, *see Hayre*, 188 F.3d at 1334. For that reason, I agree with the majority that an NOD as to a CUE claim does not in and of itself suffice as an NOD as to a *Hayre* claim.

That said, it is axiomatic that, if the appellant filed a post-November 17, 1988, NOD as to the *Hayre* claim that meets the requirements of *Ledford* and *Collaro*, there can be no question that such an NOD would constitute a jurisdiction-conferring NOD as to that claim. The appellant, indeed, filed such a jurisdiction-conferring NOD. In making this conclusion, I will assume that the June 1993 NOD, despite its reference to the failure to provide the duty to assist, does not serve as a valid *Hayre* NOD. Nevertheless, it is clear that three months earlier in March 1993, the appellant filed a timely NOD (R. at 184) as to the RO's December 1992 assignment of an effective date of September 2, 1992. R. at 181-82. That NOD expressed disagreement with the December 1992 RO effective-date assignment, and that disagreement was based on the RO's failure to fulfill the duty to assist in 1972. R. at 184. The June 1993 SOC that followed the March 1993 NOD failed to address the *Hayre* claim. R. at 198-202. Thereafter, in his June 1993 Substantive Appeal, the appellant raised to the Board the unadjudicated *Hayre* claim by arguing that the duty-to-assist breach was a "due process" error. The Board in its June 1995 decision, as did the RO in its SOC, failed to address the *Hayre* claim; the Board thereby limited its decision to the CUE claim. R. at 204. Accordingly, because the appellant both filed a jurisdiction-conferring NOD as to the *Hayre* claim and later raised that unadjudicated claim to both the Board and the Court, the Court clearly has jurisdiction to

15

consider such claim, *see Collaro, supra*, and should proceed to determine the appropriate disposition of it.

### D. Remand of *Hayre* Claim

The Secretary appears to have conceded (Sept. 2000 Memorandum (Memo.) at 9), and the appellant (June 2000 Memo. at 10) and the amicus (Brief at 19-21) agree, that in 1972 a well-grounded claim was not a prerequisite for VA compliance with a duty to assist. As to any duty to assist enforceable in 1972, the Secretary appears to concede that there was a duty to assist that was binding on the RO in 1972; that concession is based on the Federal Circuit's analysis of the VA Adjudication Procedure Manual, which apparently was in effect in 1972. Sept. 2000 Memo. at 7-8. The Secretary also concedes, based on his application to the facts in this case of the law as set forth in the Federal Circuit's *Hayre* opinion, that that duty was breached in this case. Sept. 2000 Memo. at 11-13. The Secretary argues that the Court should remand to the Board for fulfillment of the duty to assist and for readjudication of the earlier-effective-date matter. Sept. 2000 Memo. at 15. Accordingly, I would remand this case to the Board to determine in the first instance the effect of such duty-to-assist breach on the appellant's entitlement to an earlier effective date. *See Winters v. Gober*, 219 F.3d 1375, 1380 (Fed. Cir. 2000); *Hensley v. West*, 212 F.3d 1255, 1263-64 (Fed. Cir. 2000).

### III. CONCLUSION

For the foregoing reasons, I would find that the appellant has filed a jurisdiction-conferring NOD as to the *Hayre* earlier-effective-date claim, hold that the Court has jurisdiction to consider that *Hayre* claim, and remand the case to the Board for adjudication of the earlier-effective-date claim consistent with this analysis and the Federal Circuit's August 1999 opinion. Accordingly, I respectfully dissent from the majority's dismissal of the appeal.