Daniel C. SUMMERS, Claimant–
Appellant,

v.

Herschel W. GOBER, Acting Secretary
of Veterans Affairs, Respondent–
Appellee.

No. 00–7019.

United States Court of Appeals,
Federal Circuit.

Sept. 1, 2000

Kenneth M. Carpenter, Law Offices of Carpenter Chartered, of Topeka, Kansas, argued for claimant-appellant.

Steven J. Gillingham, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel; and Y. Ken Lee, Attorney, Department of Veterans Affairs, of Washington, DC.

Before MAYER, Chief Judge, CLEVENGER and GAJARSA, Circuit Judges.

Opinion for the court filed by Circuit Judge GAJARSA. Dissenting opinion filed by Chief Judge Mayer.

GAJARSA, Circuit Judge.

## DECISION

Daniel C. Summers, a veteran, appeals from the judgment of the United States Court of Appeals for Veterans Claims ("CAVC"), *Summers v. West,* No. 97–1875, 1999 WL 609502 (Vet.App. July 29, 1999), affirming the decision of the Board of Veterans' Appeals ("Board"). The Board denied Summers's claims for service connection after determining that the claim was not well grounded. Because we find that the CAVC did not err in its conclusions, we affirm.

## BACKGROUND

Summers served in the United States Army from February 1968 to February 1971. His entrance examination revealed no notations or diagnoses of hepatitis. When Summers was discharged, he reported that during service in Vietnam in September 1969, he was hospitalized for three days for treatment of a hepatitis condition.

In September 1994, Summers filed a claim of service connection for hepatitis, among other conditions. In October 1994, Summers was evaluated by Veterans Administration ("VA") personnel, who noted that Summers had been diagnosed with liver disease in July 1994. It was further noted that Summers had a history of hepatitis, possibly hepatitis B, while serving in Vietnam. In November 1994, a laboratory test administered by the VA diagnosed Summers with hepatitis C.

In January 1995, a VA physician noted that Summers had reported that he suffered from a "malaria like" illness while serving in Vietnam. Summers was again diagnosed with hepatitis C. In April 1995, a VA surgical pathology report confirmed this diagnosis.

In May 1995, a VA regional office ("RO") denied the veteran's service connection claim. On March 20, 1997, the Board affirmed. On appeal to the Board,

Summers claimed that he contracted hepatitis during his service from exposure to Agent Orange or, in the alternative, from drinking contaminated water. The Board held that Summers could not rely upon a statement in his 1971 separation form, the only in-service notation of hepatitis. Instead, the Board held that the veteran had to show that a physician had made a diagnosis of hepatitis during service based on laboratory testing. The Board also found no evidence linking Summers's current hepatitis diagnosis to any in-service contraction of the disease. Accordingly, the Board determined that the veteran's claim was not "well grounded," citing *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995).

The Board then considered the veteran's claim of service connection for hepatitis on the basis of direct service connection under 38 U.S.C. §§ 101(16) and 1110 (1994), which set forth the ultimate test for entitlement to disability payments. *See Epps v. Gober*, 126 F.3d 1464, 1468 (Fed.Cir. 1997). Based on the record before it, the Board concluded that the veteran did not establish direct service connection for his disability by a preponderance of the evidence.

Summers appealed the Board's decision to the CAVC. *See Summers*, 1999 WL 609502 at *1. Before the CAVC, Summers argued that he was entitled to service connection for his condition under 38 C.F.R § 3.303(d) (1994), because the condition was noted during service and diagnosed afterwards. The CAVC rejected his claim. First, the CAVC determined that Summers did not well ground his claim, as he failed to present competent medical evidence linking his present condition to any in-service condition of hepatitis. Second, because Summers failed to furnish a well grounded claim, the CAVC held any failure by the Board to consider subsection 3.303(d) constituted harmless error under 38 U.S.C. § 7261.

Summers now appeals the CAVC's judgment to this court. We have jurisdiction over the appeal pursuant to 38 U.S.C. § 7292.

## DISCUSSION

### A. Standard of Review

Our jurisdiction to review the decisions of the CAVC is limited by statute. Pursuant to 38 U.S.C. § 7292(a), this court may review a CAVC decision with respect to the validity or interpretation of any statute or regulation relied upon by the CAVC. *See* 38 U.S.C. § 7292(a); *Schroeder v. West*, 212 F.3d 1265, 1268 (Fed.Cir.2000). We have jurisdiction to "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under [section 7292], and to interpret constitutional and statutory provisions, to the extent presented and necessary for a decision." 38 U.S.C. § 7292(c). This court will set aside a regulation or interpretation of a regulation relied upon by the CAVC if it is found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (4) without observance of procedure required by law. *See* 38 U.S.C. § 7292(d)(1); *Meeks v. West*, 216 F.3d 1363, 1366 (Fed.Cir.2000).

Construction of a statute or regulation is a question of law we review *de novo*. *See Hodge v. West*, 155 F.3d 1356, 1361 (Fed.Cir.1998). However, our jurisdiction does not extend to either factual determinations or to the law as applied to the facts of a particular case. *See* 38 U.S.C. § 7292(d)(2); *Anglin v. West*, 203 F.3d 1343, 1345 (Fed.Cir.2000).

### B. Analysis

A veteran has the initial burden of establishing that a claim is well grounded. *See* 38 U.S.C. § 5107(a). A well grounded claim is a "plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]."

*Hayre v. West,* 188 F.3d 1327, 1331 (Fed. Cir.1999) (citation omitted); *see also Hensley v. West,* 212 F.3d 1255, 1262 (Fed.Cir. 2000) (citation omitted).

 In order for a claim to be well grounded, a veteran must show: (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *See Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997); *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995). If the determinative issue involves medical causation, competent medical evidence to the effect that the claim is plausible is required for the claim to be well grounded. *See Epps,* 126 F.3d at 1468.

 If the RO determines that the claim is well grounded, the Department of Veteran Affairs ("DVA") has the duty to assist the veteran in developing the facts which support the claim. *See id.* at 1260. Thereafter, the RO makes a determination on the merits as to whether the claim should be granted or denied. *See id.;* 38 U.S.C. § 5107(b). Because a well grounded claim as initially submitted under § 5107(a) is not necessarily a claim which will be deemed allowable under § 5107(b), there is no duty to assist the claimant until he or she meets the low burden of establishing a well grounded claim. *See Epps v. Gober,* 126 F.3d 1464, 1469 (Fed.Cir.1997); *see also Hensley,* 212 F.3d at 1262 (describing the various steps in the veterans claims process).

 On appeal to this court, Summers does not, and indeed may not, dispute the CAVC's determination that he failed to present any medical evidence of a nexus. As we noted earlier, this court does not have the jurisdiction to review either factual determinations or applications of law to fact. *See* 38 U.S.C. § 7292(d)(2). Instead, Summers argues that the CAVC erred in its understanding of the impact of 38 C.F.R. § 3.303(d) on the nexus requirement. Relying heavily on the CAVC's decision in *Savage v. Gober,* 10 Vet.App. 488 (1997), Summers asserts that a veteran need not present any medical evidence of nexus under various circumstances. One such circumstance, according to Summers, was recognized in *Savage:* where the veteran can satisfy the chronicity and continuity of symptomatology provisions of 38 C.F.R. § 3.303(b). Another such circumstance, he continues, ought to be recognized here: where the veteran can satisfy the provisions of 38 C.F.R. § 3.303(d). Summers bases this conclusion on the fact that the two subsections are part of the same regulation, and on the plain language of subsection (d).

We begin with the veteran's assertion concerning 38 C.F.R. § 3.303(b). This court has never affirmed the CAVC's understanding in *Savage* of the impact of 38 C.F.R § 3.303(b) on the medical evidence of nexus requirement. Moreover, we do not address the issue in the present case, as this case does not involve any interpretation of that subsection. Rather, the provision at issue in this case is 38 C.F.R. § 3.303(d). Therefore, any exception to the medical evidence of nexus component of a well grounded claim realized in *Savage* is simply irrelevant.

Turning to the provision which is relevant to this case, 38 C.F.R. § 3.303(d), we consider Summers's contention that this subsection creates an exception to the *Epps* medical evidence of nexus requirement. The subsection provides, in pertinent part, that "[s]ervice connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service." 38 C.F.R. § 3.303(d). Summers avers that this language means that if a claimant is diagnosed with a disease after service, and the evidence establishes that such a disease is the same as incurred in service, then medical nexus evidence is not required.

We disagree. Subsection (d) neither satisfies the requirement by presumption

nor provides any alternative of establishing a nexus. It does not address what evidentiary standards may apply to, or the elements of proof required of, a well grounded claim. It merely provides an opportunity for veterans with injuries or diseases diagnosed after they have completed service to make a valid claim of service connection. They do so "when all the evidence, including that pertinent to service, establishes that the disease was incurred in service," even if they do not qualify for a presumption of service connection provided in another regulation. 38 C.F.R. § 3.303(d). In addition, the subsection does not mandate service connection under these circumstances; instead, service connection "may" be found. *See Combee v. Brown,* 34 F.3d 1039, 1045 (Fed.Cir. 1994) (reversing CAVC under 38 U.S.C. § 1110 and 38 C.F.R. § 3.303(d) for failing to afford veteran opportunity to prove direct service connection when presumption does not apply). In this way, a veteran whose injury or disease is diagnosed after service is not precluded from proving service connection, even though he is not entitled to any presumption of service connection.

Under Summers's interpretation of subsection (d), a veteran whose disease or injury was diagnosed after service would enjoy a curious advantage over a similarly-situated veteran whose ailment was diagnosed during service. While the latter would have to offer medical evidence of a nexus, the former would be relieved of this burden. Thus, the veteran diagnosed during service would be at a marked disadvantage, for no reason other than the fact that he was diagnosed in a timely manner. Nothing in the regulation contemplates this perverse outcome.

■ Summers has been afforded precisely the opportunity that subsection (d) requires. The Board considered his claim even though: (1) he was not diagnosed until after discharge; and (2) he did not qualify for a presumption of service connection under another provision. Under these circumstances, we deduce no error in

the Board's conclusion that Summers's claim was not well grounded. Because the claim was not well grounded, any failure of the Board to consider subsection (d) was necessarily harmless. *See* 38 U.S.C. § 7261.

## CONCLUSION

■ The CAVC's decision to deny Summers's claim of service connection for hepatitis was based on Summers's failure to present medical evidence that establishes a relationship between his current hepatitis and a similar condition he had in service. Because the CAVC correctly concluded that Summers's claim was not well grounded, we affirm.

*AFFIRMED.*

MAYER, Chief Judge, dissenting.

In my view, the board improperly disregarded the lay evidence Summers presented to demonstrate that his claim was well-grounded. Therefore, the determination by the Court of Appeals for Veterans Claims that the board's failure to consider 38 C.F.R. § 3.303(d) was harmless is error.

"Congress has passed statutes and the agency regulations to assist veterans in establishing facts sufficient to support well-grounded claims and to give them every benefit that can be supported in law." *Collaro v. West,* 136 F.3d 1304, 1308 (Fed. Cir.1998). Given the manifestly pro-claimant character of the veterans' benefit scheme, lay evidence is always relevant to the determination of whether a claim is well-grounded, especially where, as here, a veteran was treated in combat for his condition. *See* 38 U.S.C. § 1154(b) (1994).

When Summers sought to rely on lay evidence showing that he had been treated for hepatitis in the field, a fact which is undisputed, the board had an obligation to consider that evidence in determining whether his claim was well-grounded. Moreover, the absence of specific medical evidence that Summers suffered from the same type of hepatitis in-service, for which

he was later diagnosed, is not dispositive of his claim because the technology to identify hepatitis C did not exist until the late 1980s, almost 20 years after his separation physical. *See Hearing on H.R. 1020 Before the Subcomm. on Benefits of the House Comm. of Veteran's Affairs,* 106th Cong. (2000) (statement of Nora E. Egan, Deputy Under Secretary for Management, DVA).

Had the board not deprived Summers of the opportunity to make the threshold showing that his claim was well-grounded, he would no doubt have qualified for the presumption of service-connection found in 38 C.F.R. § 3.303(d) (1999), which alleviates the evidentiary burden on a combat veteran.