Citation Nr: 1528205 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 12-04 250 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUE

Entitlement to service connection for a disorder manifested by vertigo and disequilibrium, to include as secondary to service-connected disabilities.


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

Appellant and his spouse


ATTORNEY FOR THE BOARD

W. Yates, Counsel

INTRODUCTION

The Veteran served on active duty from January 1955 to January 1958. This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan.

The issue of entitlement to service connection for a skin disorder, including acne and eczema, was raised in the December 2014 written brief presentation submitted by the Veteran's representative. This issue has not been adjudicated by the RO. Therefore, the Board does not have jurisdiction over it, and it is referred to the RO for appropriate action. 38 C.F.R. § 19.9(b) (2014).

This appeal has been advanced on the Board's. 38 U.S.C.A. § 7107(a)(2) (West 2014); 38 C.F.R. § 20.900(c) (2014).


FINDING OF FACT

A current disorder manifested by vertigo and disequilibrium is not shown to be related to his military service, or to have been caused or aggravated by a service-connected disability.


CONCLUSION OF LAW

The criteria for service connection for a disorder manifested by vertigo and disequilibrium, to include as secondary to a service-connected disability, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2014).



REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). The RO's July 2009 and March 2013 letters advised the Veteran of the criteria for establishing his claim of service connection for a disability manifested by vertigo and disequilibrium, to include as secondary to service-connected disabilities. See Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); see also Bernard v. Brown, 4 Vet. App. 384, 394 (1993); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Accordingly, the RO satisfied the notice requirements with respect to the issue being adjudicated herein. 

The duty to assist the Veteran has also been satisfied. The RO has obtained the Veteran's available service treatment records and all identified post-service treatment records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. In December 2011, and May 2013, the Veteran underwent VA examinations for ear disabilities. Supplemental medical opinions were then obtained in December 2013, April 2014, October 2014, November 2014, and February 2015, to ensure full consideration of whether the Veteran's disability manifested by dizziness and disequilibrium was related to his military service, or was caused or aggravated by his service-connected disabilities. All of these examinations and medical opinions were provided by the same VA examiner, who reviewed the claims file, reviewed with the Veteran his history of dizziness, vertigo, and disequilibrium, and conducted a thorough physical examination. After reviewing the evidence of record, the VA examiner provided adequate medical opinions addressing the etiology of the Veteran's claimed disability. The examiner also provided supporting rationales for the opinions expressed. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

Pursuant to the Board's remands in February 2013, November 2013, April 2014, September 2014, and January 2015, the RO provided the Veteran with adequate notice; provided the Veteran with additional opportunities to submit or identify evidence in support of his claim; and obtained adequate medical opinions addressing the etiology of the Veteran's current disability manifested by vertigo and equilibrium problems. Accordingly, the directives of the Board's prior remands have been substantially complied with. See Stegall v. West, 11 Vet. App. 268 (1998).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486.

II. General Legal Criteria and Analysis

Service connection may be established for a disability resulting from an injury incurred or disease contracted in the line of duty, or for aggravation of a preexisting injury incurred or disease contracted in line of duty, in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection is also warranted for a disability, which is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. 

The Veteran is seeking service connection for a disorder manifested by vertigo and equilibrium problems. He contends that this disorder either began during his military service or was caused or permanently aggravated by his service-connected disabilities.

The Veteran served on active duty in the Army from January 1955 to January 1958. His report of separation, Form DD 214, noted that he served in the 20th Field Artillery Regiment. The report listed his inservice specialty as a field artillery operations and intelligence specialist, and no combat service was indicated. 

The Veteran's entrance examination, conducted in January 1955, revealed normal findings. An April 1955 service treatment report noted the Veteran's complaints of pain in his left ear. A May 1955 service treatment report noted the Veteran's complaints of left ear deafness. The report listed a diagnosis of otitis media, chronic, with perforation. A June 1955 service treatment report noted the Veteran's history of otitis media two months earlier which was treated. The Veteran reported that he had since had diminished hearing in his left ear. Physical examination revealed that the left eardrum did not move. The right ear was normal. The report concluded with an impression of adhesive otitis in the left ear, with irreversible deafness in the left ear. An October 1955 service treatment report noted the Veteran's history of otitis media of the left ear beginning five months earlier, which was subsequently diagnosed as adhesive otitis with irreversible deafness. A September 1957 service treatment report noted the Veteran's history of left ear hearing loss. Physical examination revealed a small perforation of the left eardrum, with some drainage. The right eardrum was normal. The report concluded with a diagnosis of perforation left eardrum with slight, chronic otitis media. A September 1957 audiological evaluation revealed left ear hearing loss. In December 1957, the Veteran underwent his separation examination. 

In February 1958, the Veteran filed a claim for VA compensation. Where the form asks about the nature of disease or injuries for which the claim is made, the Veteran wrote, "deaf left ear." 

In March 1958, a VA physical examination was conducted. The Veteran indicated that he was hospitalized inservice for an ear condition, and that he had not received any treatment for this condition since his discharge. The report noted the Veteran's complaints of not being able to hear in the left ear. Physical examination revealed his left eardrum to be dull, scarred, and retracted. Neurological findings, including sensory status and equilibrium, were listed as normal. The report concluded with a diagnosis of otitis media, adhesive, left, chronic; and defective hearing, conductive, left, chronic, secondary to the otitis media.

In October 1963, a VA physical examination was conducted. The Veteran reported a history of his left eardrum popping while on the firing range at Fort Ord in 1955. Since that time, he reported having decreased hearing and ringing in the left ear. He also reported having drainage from the left ear up until one month earlier. Pursuant to this examination, an audiological evaluation was conducted. The audiological examiner separately noted the Veteran's history of his left ear popping while he was on a firing range in 1955. The audiological examiner also noted the Veteran's complaints of decreased hearing in the left ear, drainage in the left ear, and tinnitus. The audiological evaluation revealed left ear hearing loss. The report concluded with a diagnosis of chronic suppurative otitis media, inactive. 

In June 2009, the Veteran filed his present claim seeking service connection for "equilibrium problems with my balance." In a July 2009 statement, the Veteran indicated that he underwent surgery to repair a hole in his left ear in 1963. He indicated that he had lost 80 percent of his hearing at that time, and that he had not been to the ear doctor since.

In September 2009, a VA audiological examination was conducted. The examination report noted the Veteran's history of having a tympanoplasty of the left ear during service. It also noted that the Veteran had not received treatment since then. An audiological evaluation was conducted at that time and revealed moderate sensorineural hearing loss in the right ear and moderate to profound mixed hearing loss in the left ear. 

A November 2010 VA treatment report noted the Veteran's complaints of dizziness upon rising from a sitting to standing position. The Veteran stated that he did not consider the dizziness to be a significant problem for him at that time. Rotary chair testing revealed abnormal phase lags, abnormal gain (high), and abnormal symmetry (right weakness).

In December 2011, a VA examination for ear conditions was conducted. The VA examiner noted that the Veteran's claims file had been reviewed. The report noted the Veteran's history of having been treated for otitis media of the left ear during service, which was subsequently diagnosed as adhesive otitis with irreversible hearing loss. Following his separation from service, the Veteran reported that he was treated with topical eardrops in 1958 while in Texas, and that he had been treated by private physicians for recurrent ear infections. The Veteran also indicated that the onset of his current dizziness was more than five years earlier, and that this condition occurs three to five times a week, lasting five to 30 minutes each. 

In December 2012, a video conference hearing was held before the Board. At the hearing, the Veteran testified that he has had equilibrium problems ever since leaving military service. He also indicated that he underwent surgery to repair his left ear three years after his separation from service. The Veteran's spouse testified that she met the Veteran roughly one and one-half years after his military service, and that he had always walked somewhat unbalanced since she had known him.

In May 2013, a VA examination for ear conditions was conducted. The VA examiner noted that the Veteran's claims file had been reviewed, and that the Veteran and his spouse were present for the examination. The Veteran reported a history of dizziness with an onset approximately in 2006. The Veteran indicated that this condition has progressively worsened, and now occurred three to four times a week, lasting five to 30 minutes, and that it was accompanied at times with nausea. The Veteran reported having ear surgery during service and in a clinic after his separation from service around 1965. Following a physical examination, the examiner opined that the Veteran's history of loss of balance was "less likely than not" related to his adhesive otitis media treated in service.

In December 2013, a VA supplemental medical opinion was obtained. The VA examiner noted that the Veteran's claims file had been reviewed. The examiner opined that the Veteran's disability manifested by vertigo and equilibrium problems was "less likely than not" incurred in or was caused by his military service. In support of this opinion, the VA examiner noted the 2006 onset of Veteran's history of loss of balance, the length of time between the Veteran's military service and the first complaints of dizziness, and the lack of any documented evidence of treatment during the interval period. The examiner also noted that based upon a medical literature review, otitis media does not result in loss of balance many years later; and hearing loss and tinnitus does not cause a history of loss of balance. The examiner further noted that a history of ear surgery on the tympanic membrane does not result in dizziness or vertigo, and that the Veteran's claimed treatment with ear drops after his separation from service sounded like treatment for otitis externa, while vertigo is an inner ear and vestibular dysfunction. 

In November 2014, a VA supplemental medical opinion was obtained. The VA examiner opined that the Veteran's disability manifested by vertigo and equilibrium problems was 'less likely than not' incurred in or was caused by his military service. In support of this opinion, the examiner noted that many years (50) had passed between the Veteran's inservice treatment for otitis media in 1955 and the onset of his loss of balance beginning around 2006. The examiner noted that a review of medical literature failed to show that otitis media resulted in loss of balance many years later; and failed to show that hearing loss and tinnitus resulted in a history of loss of balance. The examiner also noted that the Veteran's history of ear surgery was on the tympanic membrane which does not result in dizziness or vertigo, and the Veteran's claimed post service treatment with eardrops while in Texas sounded like treatment for otitis externa, while vertigo is an inner ear and vestibular dysfunction. Thus, the examiner found that the Veteran's history of dizziness and disequilibrium was not caused or aggravated by his left adhesive otitis media in 1955, with bilateral hearing loss and tinnitus. 

In January 2015, the Veteran, acting through his representative, submitted articles indicating that signs and symptoms of otitis media and ear infections may include dizziness, vertigo, and development of balance problems.

In February 2015, a VA supplemental medical opinion was obtained. The VA examiner noted that the Veteran's claims file was reviewed. The examiner opined that the Veteran's disability manifested by vertigo and equilibrium problems was not caused or aggravated by his service-connected left ear adhesive otitis media with bilateral hearing loss and tinnitus. In support of this opinion, the examiner noted that the Veteran's service treatment records and his immediate post military treatment records are silent as to any complaints of dizziness or disequilibrium; hence, there is no medical evidence of chronicity and continuity of the claimed condition. The examiner also cited the lapse in time between the Veteran's military service and the onset of his complaints of dizziness. The examiner reported that a review of current medical literature revealed that otitis media does not result in loss of balance many years later; and that hearing loss and tinnitus does not result in loss of balance. The examiner also noted that the post service treatment with eardrops reported by the Veteran sounded like treatment for otitis externa, and that vertigo is an inner ear and vestibular dysfunction, and they are not inter-related. Finally, the examiner cited a text book on current diagnosis and treatment of otolaryngology, which indicated that vestibular dysfunction is common in the elderly, with reported prevalence of vertigo, dysequilibrium or imbalance to be as high as 47 percent in men.

Service connection has been established for adhesive otitis media with bilateral hearing loss and for tinnitus.

Based upon a review of the evidence of record, the Board concludes that a current disorder manifested by vertigo and disequilibrium was not incurred in or aggravated by his military service. The Veteran's service treatment records are completely silent as to any inservice complaints of vertigo, dizziness, or other disequilibrium. Post service physical examinations conducted in February 1958 and in October 1963 noted the Veteran's complaints of decreased hearing in the left ear, drainage in the left ear, and tinnitus. These examination reports were completely silent as to any complaints of or findings of vertigo, dizziness, or disequilibrium. In addition, the March 1958 examination specifically reported normal neurological findings, including consideration of sensory status and equilibrium. Following his separation from service, the first documented post service complaint or diagnosis of any condition manifested by dizziness, vertigo, or disequilibrium was not until the Veteran filed his present claim seeking service connection in July 2009, over 50 years after his separation from military service. Moreover, the medical opinions of record found that any condition manifested by dizziness, vertigo, or disequilibrium was not related to his military service. Thus, the objective evidence of record does not indicate that a link between the Veteran's current disability and his military service.

Although the Veteran and his spouse are competent to report symptoms capable of lay observation, the Board finds their contentions that the Veteran has experienced ongoing symptoms of dizziness, vertigo, and equilibrium problems since his military service to be inconsistent, both internally and with the other evidence of record. 38 U.S.C.A. § 1154(b); see Charles v. Principi, 16 Vet. App. 370, 374-75 (2002) (noting that the appellant is competent to testify regarding symptoms capable of lay observation); Caluza v. Brown, 7 Vet. App. 498, 511 (1995). As noted above, no complaints of dizziness, vertigo, or equilibrium problems were noted in the Veteran's service treatment reports or his post service physical examinations in February 1958 and October 1963. Moreover, during his May 2013 VA examination for ear conditions, which the Veteran's spouse attended, the Veteran reported a history of dizziness with an onset approximately in 2006. 

The Veteran has also been inconsistent in reporting his post service history of treatment. During his September 2009 VA audiological examination, the Veteran denied receiving any post service medical treatment for his left ear disability. During his December 2011 VA examination for ear conditions, he reported having been treated with topical eardrops while in Texas in 1958. He also reported having been treated by private physicians since his separation from military service for recurrent ear infections, and he denied having any surgeries on his ears. During his January 2013 hearing before the Board, he testified that he underwent post service surgery twice to repair his left eardrum, which he specifically recalled as having occurred in the year prior to the birth of his child in December 1963. Thereafter, he reported not seeking any treatment until recently, as he was told there was nothing that could be done for his equilibrium problems. 

Given the inconsistency in his statements and testimony concerning the onset of symptomatology and the nature of treatment received, along with the lack of any complaints of dizziness, vertigo, or equilibrium problems having been noted in his service treatment records or his post service VA examinations in February 1958 and October 1963, the Board finds the Veteran's contentions concerning continuity of symptomatology since service are not probative.

There is no competent evidence linking the Veteran's current disability manifested by vertigo and equilibrium problems to his military service. The VA examiner in November 2014 opined that the Veteran's current disability was "less likely than not" incurred in or was caused by his military service. In support of this opinion, the examiner noted that decades had passed between the Veteran's inservice treatment for otitis media and the onset of his loss of balance beginning around 2006. The examiner also noted that a review of medical literature failed to show that otitis media results in loss of balance many years later; and failed to show that hearing loss and tinnitus results in a history of loss of balance. The examiner indicated that the Veteran's reported history of ear surgery was on the tympanic membrane which does not result in dizziness or vertigo, and that his claimed post service treatment with eardrops while in Texas sounded like treatment for otitis externa, while vertigo is an inner ear and vestibular dysfunction. 

Additionally, the Board finds that the medical evidence does not relate the Veteran's current disability manifested by vertigo and equilibrium problems to his service-connected disabilities. The VA examiner in February 2015 opined that the Veteran's disability manifested by vertigo and equilibrium problems was not caused or aggravated by his service-connected left ear adhesive otitis media with bilateral hearing loss and tinnitus. In support of this opinion, the examiner noted that the Veteran's service treatment records and his immediate post service physical examination reports are silent as to any complaints of dizziness or disequilibrium; hence, there is no medical evidence of chronicity and continuity of the claimed condition. The examiner also cited the lapse in time between the Veteran's military service and the onset of his complaints of dizziness. The examiner also indicated that his review of current medical literature did not show that otitis media results in loss of balance many years later; or that hearing loss and tinnitus results in loss of balance. The examiner also noted that the post service treatment with eardrops reported by the Veteran sounds like treatment for otitis externa, and vertigo is an inner ear and vestibular dysfunction, and they are not inter-related. Finally, the examiner cited a text book on current diagnosis and treatment of otolaryngology which indicated that vestibular dysfunction is common in the elderly, with reported prevalence of vertigo, dysequilibrium or imbalance to be as high as 47 percent in men.

The Board acknowledges that the Veteran has submitted evidence which indicates that otitis media can result in dizziness, vertigo and equilibrium problems. This generic evidence does not, however, establish that this in fact occurred in this specific Veteran's case. This evidence was considered by the VA examiner, who concluded that a review of medical literature does not show that otitis media results in these symptoms developing many years later, which in this case was decades later.

Consequently, there is no competent evidence linking any current disability manifested by vertigo and equilibrium problems to the Veteran's military service or his service-connected disabilities. Absent such a nexus, service connection cannot be established. Boyer v. West, 210 F.3d 1351, 1353 (Fed. Cir. 2000); Maggitt v. West, 202 F.3d 1370, 1375 (Fed. Cir. 2000); D'Amico v. West, 209 F.3d 1322, 1326 (Fed. Cir. 2000); Hibbard v. West, 13 Vet. App. 546, 548 (2000); Collaro v. West, 136 F.3d 1304, 1308 (Fed. Cir. 1998); Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991) (holding that the Board is prohibited from substituting its own medical judgment in place of the opinions of medical professionals.

Accordingly, the preponderance of the evidence is against the Veteran's claim for service connection for a current disorder manifested by vertigo and disequilibrium. In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the Veteran's claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for a disorder manifested by vertigo and disequilibrium, to include as secondary to service-connected disabilities, is denied.



____________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs