﻿Citation Nr: AXXXXXXXX
Decision Date: 03/19/19 Archive Date: 03/19/19

DOCKET NO. 181010-624
DATE: March 19, 2019

ORDER

Entitlement to an initial 10 percent disability for residuals of a right ankle strain is granted, subject to the regulations applicable to the payment of monetary benefits.

Entitlement to service connection for spondylosis of the cervical spine and cervical spine strain is granted.

Entitlement to service connection for lumbosacral strain, spondylosis of the lumbar spine, and lumbago is granted.

FINDINGS OF FACT

1. Throughout the entire appeal period, the Veteran’s right ankle disability was manifested by instability and moderate limited range of motion.

2. Resolving reasonable doubt in the Veteran’s favor, her cervical spine spondylosis manifested to a compensable degree within one year of her separation from service and is not attributable to intercurrent causes.

3. Resolving reasonable doubt in the Veteran’s favor, her cervical spine strain was incurred in active military service. 

4. Resolving reasonable doubt in the Veteran’s favor, her current lumbar spine disability was incurred in active military service.

CONCLUSIONS OF LAW

1. The criteria for an initial disability rating of 10 percent for residuals of a right ankle strain have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.7, 4.10, 4.14, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5271, 5262.

2. The criteria for entitlement to service connection for cervical spine strain, spondylosis of the cervical spine, are met. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310.

3. The criteria for entitlement to service connection for lumbosacral strain, spondylosis of the lumbar spine, and lumbago are met. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with the Department of Veterans Affairs’ (VA) decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty from May 1998 to December 2005. The Veteran selected the Supplemental Claim lane when submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record prior to the issuance of the RAMP rating decision, The Veteran timely appealed this RAMP rating decision to the Board of Veterans Appeals (Board) and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

In the August 2018 RAMP decision, the AOJ found that new and relevant evidence was submitted to warrant readjudication of the claim for a compensable disability rating for the service-connected ankle sprain, service connection for low back sprain, degenerative disc disease of the lumbar spine, cervical spine sprain, and degenerative disc disease of the cervical spine. The Board is bound by these favorable findings. AMA, Pub. L. No. 115-55 § 5104A, 131 Stat. 1105, 1106-07. 

1. Entitlement to an initial compensable disability rating for residuals of a right ankle strain

The Veteran contends that she is entitled to a compensable disability rating for her right ankle strain. The Veteran’s right ankle disability is currently rated non-compensable effective January 29, 2013. The Board notes that this is a claim for an initial compensable disability rating. 

Disability ratings are determined by applying the criteria set forth in the VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran’s disability. 38 C.F.R. § 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595. If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided. 38 C.F.R. § 4.14. Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. Id. 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervations, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40. 

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202. The provisions regarding the avoidance of pyramiding, see 38 C.F.R. § 4.14, do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. However, those provisions should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. 38 C.F.R. §§ 4.40, 4.45. 

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Painful motion is an important factor of joint disability which is entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. However, the evaluation of painful motion as limited motion only applies when the limitation of motion is noncompensable under the applicable diagnostic code. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). 

Whether the issue is one of an initial rating or an increased rating, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as “staged” ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). 

The Veteran’s right ankle disability is rated under Diagnostic Code 5271. Under Diagnostic Code 5271 (ankle, limited motion), marked limitation of motion in the ankle warrants a 20 percent disability rating, and moderate limitation of motion in the ankle warrants a 10 percent disability rating. See 38 C.F.R. § 4.71a, Diagnostic Code 5271.

For purposes of VA compensation, normal dorsiflexion of the ankle is zero to 20 degrees and normal ankle plantar flexion is zero to 45 degrees. See 38 C.F.R. § 4.71a, Plate II.

The Board notes that the words “moderate” and “marked” are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are “equitable and just.” See 38 C.F.R. § 4.6.

The Veteran’s post-service treatment records indicates that the Veteran’s right ankle had been treated at various periods over the course of the appeal period. The treatment records note that the Veteran underwent surgery on her right ankle in March 2007 and in August 2014. Throughout the appeal period the Veteran complained of ankle instability. During the appeal period the Veteran did not consistently report pain due to her ankle disability upon motion; however, the treatment records do indicate that through her course of treatment she would report pain. 

The Veteran underwent a private examination of her right ankle in August 2017. The examiner diagnosed the Veteran with post-traumatic right ankle arthritis. Upon examination the examiner found that the Veteran’s right ankle revealed swelling and there was pain with palpitation of the antero-medial and antero-lateral ankle. The Veteran had a range of motion of 30 degrees extension, 20 degrees of flexion, 10 degrees inversion and 20 degrees of eversion. The examiner opined that the Veteran’s right ankle had moderate limitation of motion. The examiner reasoned that the Veteran had a Brostrom repair surgery in 2007 and tendon ligament reconstruction repair in 2014 which were both unsuccessful in alleviating her chronic pain and instability.

The Board notes that the Veteran did not attended a scheduled VA ankle examination in February 2015. Despite missing her scheduled VA examination, the Board finds that a 10 percent rating throughout the entire appeal period is warranted for the Veteran’s right ankle disability. The Veteran’s August 2017 private examiner found that the Veteran’s right ankle disability caused moderate limitation of motion. Under Diagnostic Code 5271, moderate limitation of motion is rated 10 percent. The Board notes that prior to August 2017, there is limited evidence that the Veteran’s ankle disability caused any limitation of motion. However, the totality of the post-service treatment records indicates that the Veteran had chronic pain and instability in her right ankle. The criteria for rating ankle disabilities does not include a code specifically addressing ankle instability. As such, the Board finds that in this case, a rating by analogy can be awarded under Diagnostic Code 5262. Diagnostic Code 5262 provides schedular ratings for impairment of the tibia and fibula; malunion with a slight ankle disability which warrants a 10 percent rating. Therefore, despite limited evidence that the Veteran’s right ankle disability caused limitation of motion prior to September 2017, providing the Veteran the benefit of the doubt and when rated by analogy the Veteran’s right ankle instability caused a “slight ankle disability.” Therefore, throughout the appeal period the Veteran’s right ankle disability most closely approximates a 10 percent disability rating.

The Board acknowledges that VA examinations must include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. 38 C.F.R. § 4.59; Correia v. McDonald, 28 Vet. App. 158 (2016). The Board has also considered the holding of the United States Court of Appeals for Veterans Claims (Court) in Sharp v. Shulkin, 29 Vet. App. 26, 33 (2017), addressing 38 C.F.R. § 4.40, which states that a VA examiner must "express an opinion on whether pain could significantly limit functional ability" and the examiner's determination in such regard "should, if feasible, be portrayed in terms of the degree of additional range-of-motion loss due to pain on use or during flare-ups." In light of these requirements, the Board has carefully considered the private examination of record and whether it complied with Correia and Sharp. Significantly, however, to the extent that the examination findings of record relative to the right ankle are not completely in compliance with Correia and/or Sharp, the Board finds that remand for additional examination would serve no useful purpose. Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991). In that regard, the Board emphasizes that current examination findings would not be useful in adjudicating the rating assigned for the period prior to August 2017, and any retrospective opinion would merely impose an additional burden on VA with no benefit flowing to the Veteran, as VA would be asking an examiner to speculate as to the pre-August 2017 ranges of motion. Moreover, the Veteran has failed to report for an earlier VA examination and has not indicated any willingness to report for a rescheduled examination nor provided good cause for her failure to report. As noted, she elected to submit private medical evidence relative to the issues on appeal including the evaluation of the service-connected right ankle. Therefore, the Board has adjudicated this claim on the available evidence.

The Board does not find that the Veteran’s ankle disability causes marked limitation of motion. The only evidence of limitation of motion was in the Veteran’s September 2017 private examination. Further, the Veteran does not have not have a tibia or fibula impairment. Thus, a disability rating in excess of 10 percent for the Veteran’s right ankle is not warranted. 

 

Service Connection Generally

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active duty. 38 U.S.C. § 1131; 38 C.F.R. §§ 3.303, 3.304. In addition, service connection may be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). Service connection may be established for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. 

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word “chronic”. When the disease identity is established there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303 (b). 

A claim based on chronicity requires that (1) the chronic condition is observed during service, (2) continuity of symptomatology is demonstrated thereafter and (3) competent evidence relates the present condition to that symptomatology. See Savage v. Gober, 10 Vet. App 489 (1997). Although a layperson is not competent to provide evidence that the observable symptoms are manifestations of chronic pathology or diagnosed disability, a lay person is competent to testify as to observable symptoms. See Falzone v. Brown, 8 Vet. App. 398, 403 (1995); Espiritu v. Derwinski, 2 Vet. App. 492 (1992). Notwithstanding a claimant’s showing of post-service symptomatology and in-service injury, competent medical expertise is required to make a medical diagnosis and relate the present diagnosis to service. Summers v. Gober, 225 F.3d 1293 (Fed. Cir. 2000). 

When a veteran served continuously for 90 days or more during a period of war and a chronic disease such as arthritis, becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in or aggravated by service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

2. Entitlement to service connection for cervical spine disability

The Veteran contend that her cervical spine disabilities, cervical spine sprain and degenerative disc disease of the cervical spine, are related to service. 

The AOJ found that the Veteran had treatment and complaints for a cervical spine disability. Therefore, the issue before the Board is whether any cervical spine disability is etiologically related to service.

The Veteran’s post-service treatment records indicate that the Veteran was in a motor vehicle accident in January 2006. The treating physician for the motor vehicle accident stated that the Veteran had neck pain. The private doctor diagnosed acute strain of the cervical spine. The Veteran’s private doctor stated the mechanism for the neck pain was the motor vehicle accident. 

The Veteran underwent a VA examination in May 2006. The examiner diagnosed the Veteran with mild cervical spondylosis. 

The Veteran underwent a private examination in September 2017. The examiner diagnosed the Veteran with cervicalgia secondary to cervical strain with intervertebral disc syndrome (multilevel degenerative spondylosis). The examiner opined that it is as least likely as not that the Veteran’s present cervical disc disease was first incurred during her service. The examiner reasoned that the Veteran entered service without any cervical spine issues. The examiner noted she was evaluated and treated for a cervical spine injury in 1999 when she lifted a computer. The examiner noted that the Veteran later underwent evaluation and treatment in 2004 for continued pain in her cervical spine. The examiner found the motor vehicle accident in January 2006 was a source of aggravation for her already existing cervical spine issues. 

The Board finds that service connection for the Veteran’s cervical spine spondylosis is warranted. The Veteran was diagnosed with arthritis of the cervical spine within one year of separation of service. During that examination the Veteran complained of pain on motion of her neck and had some limitation of motion. Under Diagnostic Code 5003 degenerative arthritis, a joint that causes pain upon motion and limits of range of motion shall be entitled to a 10 percent rating. See 38 C.F.R. § 4.71a. The Board notes there is evidence of a motor vehicle accident which caused a neck sprain and pain in the Veteran’s neck. However, the Board finds that this does not arise to affirmative evidence that the Veteran’s arthritis in her cervical spine was caused by the accident because pain does not necessarily equate to degenerative changes of a spine. The Board further notes that the September 2017 private examiner found the motor vehicle accident did not cause the Veteran’s spondylosis, but rather aggravated it. The examiner also found the Veteran’s cervical strain was caused by service. Providing the Veteran the benefit of the doubt, the Board finds the Veteran’s cervical spine strain is also of service origin. Therefore, the Veteran is entitled to service connection for a cervical spine strain and spondylosis under 38 C.F.R. § 3.309. These appeals are granted.

3. Entitlement to service connection for a low back disability to include degenerative disc disease of the lumbar spine and low back sprain.

The Veteran contends that her low back disability began in service or in the alternative were caused or aggravated by her service-connected right ankle disability and/or herein granted cervical spine disabilities. 

The AOJ found that the Veteran had treatment and complaints for a low back disability. Therefore, the issue before the Board is whether any lumbar spine disability is etiologically related to service and/or service-connected right ankle disability and/or spine disability.

The Veteran’s service treatment records indicate that in June 2003 the Veteran slipped on stairs and injured her back. The Veteran again complained and was treated for low back pain in January 2004. 

The Veteran’s post-service treatment records indicate that the Veteran was in a motor vehicle accident in January 2006. The treating physician for the motor vehicle accident stated that the Veteran had low back pain. The private doctor diagnosed acute strain of the lumbar spine. Veteran’s private doctor stated the mechanism for the low back pain was the motor vehicle accident. 

The Veteran’s post-service treatment records indicate the Veteran had been treated for back pain lumbago, sciatica, and back pain since as earlier as 2008. Treatment records also indicate a diagnosis of multilevel spondylosis in October 2016.

The Veteran underwent a VA examination in May 2006. The examiner diagnosed the Veteran with a lumbar strain. The examiner noted that the Veteran’s service treatment records did not indicate any low back injury in service. During the examination the Veteran reported that her low back pain began in 1999 or 2000. The examiner did not provide an etiological opinion concerning the Veteran’s diagnosed lumbar sprain. 

In September 2017, the Veteran underwent a private examination. The examiner diagnosed the Veteran with lumbago secondary to a lumbar strain with intervertebral disc syndrome. The examiner opined that it is as least likely as not the Veteran’s present lumbar disc disease was first incurred during her service. The examiner reasoned that the Veteran did not have any lumbar spine issues upon entrance into service. The Veteran had an injury in 2002 when she slipped down some stairs. The Veteran continued to complain and be treated for her back through discharge. The examiner noted that the Veteran had a motor vehicle accident a few weeks following her discharge, but this was an aggravation of her already existing lumbar spine issue. The examiner noted the Veteran continued to have chronic pain. The examiner noted that a September 2014 VA examination diagnosed the Veteran with degenerative disc disease of the lumbar spine. 

The Board finds that the most probative evidence in the record is the September 2017 private examiner’s opinion that the Veteran’s lumbago secondary to lumbar strain with intervertebral disc syndrome at least as likely as not began in service. The Board notes that record does not contain any other etiological opinion concerning the Veteran’s low back disabilities. The September 2017 examiner and the record indicate that an examination occurred in September 2014. However, the print out for a September 2014 examination was not available for review. Taking into account the adequate positive private September 2017 examiner’s opinion and, cognizant of the benefit of the doubt rule, the Board finds that further development to obtain any missing VA September 2014 examination report unnecessary. See generally Mariano v. Principi, 17 Vet. App. 305, 312 (2003) (it is not permissible to undertake additional development for the purpose of developing negative evidence, and reasons and bases should be provided to explain the decision to pursue further development when it could be construed as obtaining evidence for that purpose). Providing the Veteran the benefit of the doubt, service connection for lumbago (low back pain) spondylosis, and low back strain are warranted.

The Board notes that the Veteran further argued that her low back disability was secondary to the service-connected ankle and cervical spine disabilities. However, as the Veteran’s appeal has been granted in full based upon direct service connection any secondary service connection claim is moot. 

 

S. L. Kennedy

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Robert Batten, Associate Counsel